## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

**JAY BEANE,**

      Petitioner,

v.

**UNITED STATES OF AMERICA,**

      Respondent.

**No. 11-CV-4001-DEO**

**ORDER**

_____

This matter is before this Court on Jay Beane's (hereinafter "Petitioner") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence imposed by this Court on November 12, 2008. Docket No. 1.

## I.  PROCEDURAL HISTORY

On March 25, 2008, a Grand Jury indicted Petitioner on two counts: (1) conspiracy to distribute 50 or more grams of crack cocaine after having been previously convicted of a felony drug offense, and (2) possession with intent to distribute 5 grams or more of crack cocaine after having been previously convicted of a felony drug offense. Cr. Docket No. 2.[1] On April 1, 2008, Petitioner and his defense counsel,

_____

[1] Throughout this Memorandum and Opinion Order, the docket related to the Defendant's earlier criminal proceedings, 08-CR-4028-DEO-1, will be cited as follows: "Cr. Docket No. . .

Michael Smart, signed a written waiver of personal appearance at arraignment.  Cr. Docket No. 4.

At trial, the Government presented testimony from law enforcement officials related to the stop of Petitioner's vehicle on February 29, 2008, and subsequent execution of a search warrant at Petitioner's residence.  Cr. Docket No. 49, 5.  Pursuant to the traffic stop, officers recovered over 56 grams of crack cocaine and over $4,700.00 in cash.  <u>Id.</u>  The subsequent search of Petitioner's residence produced bags with torn corners and digital scales, both of which are indicative of drug trafficking.  <u>Id.</u> at 6.  In a post-Miranda statement, Petitioner admitted the drugs and money seized belonged to him; he further stated that, over the past two weeks, he had distributed between one half to one kilogram of cocaine brought to Sioux City, Iowa, from Chicago, Illinois.[2]  <u>Id.</u> at 7.  Shanta Banks testified as to Petitioner's role as a leader of a conspiracy to distribute crack cocaine brought to Sioux City from Chicago.  Antonio Jones, Daniel Frye, Kimberlee

---

. ."

[2] Defendant maintains the statements were made prior to Miranda warnings.

Fontenot, and Myree Coleman also testified regarding their involvement with Petitioner in the distribution of crack cocaine and corroborated the theory that he was bringing the drugs in from Chicago. Id. Danielle Twyford also testified regarding her direct observations of Petitioner's involvement in the crack cocaine trade. Id. On July 24, 2008, the jury found Petitioner guilty of both counts of the indictment. Cr. Docket No. 31.

At sentencing, this Court found Petitioner was a career offender pursuant to U.S.S.G. § 4B.1.1. Id. For purposes of calculating a Guideline sentencing range, a career offender is automatically given a criminal history category of VI and, when a defendant is facing a maximum sentence of life - as Petitioner was - an offense level of 37. U.S.S.G. § 4B1.1(b). An offense level of 37 and a criminal history category of VI call for a Guideline imprisonment range of 360 months to life. Id. Absent a career offender enhancement, Petitioner would have had an offense level of 37[3] and a criminal history

---

[3] Three of Petitioner's offense level points, absent the career offender enhancement, were derived from an enhancement for Petitioner's role in the offense as a manager or supervisor of criminal activity. Cr. Docket No. 49. At the Sentencing hearing, this Court indicated that it had serious

category of IV, giving him a Guideline range of 292 to 365 months. In the end, this Court granted Petitioner a downward variance from the 360 months to life range based on 18 U.S.C. § 3553(a) factors and sentenced him to 300 months in prison.

On June 11, 2009, Petitioner appealed this Court's ruling, arguing this Court improperly considered what the Eighth Circuit might do on appeal rather than the 18 U.S.C. § 3553(a) sentencing factors. Cr. Docket No. 69. On October 20, 2009, the Eighth Circuit Court of Appeals affirmed this Court's ruling. <u>Id.</u> On June 1, 2010, the Supreme Court denied Petitioner's writ of certiorari. Cr. Docket No. 76. On January 3, 2011, Petitioner timely filed his 28 U.S.C. § 2255 Petition with this Court. Docket No. 1.

Petitioner makes the following arguments in support of his 28 U.S.C. § 2255 Petition: (1) he was unlawfully denied an arraignment; (2) Defense counsel was ineffective for

---

doubts about the applicability of this enhancement, but noted that it would apply it because it was moot in light of Petitioner's enhancements for being a career offender. Cr. Docket No. 57, 3. If this Court would have refused to apply the role in the offense enhancement and the career offender enhancement, Petitioner would have had an offense level of 34 and a criminal history category of IV, resulting in a Guideline sentencing range of 210 to 262 months.

failing to properly argue Petitioner was not subject to U.S.S.G. §4B1.1 career offender enhancement; (3) Defense counsel was ineffective for failing to point out that Defendant's prior conviction resulted in both a 21 U.S.C. § 851 enhancement and a U.S.S.G. § 4B1.1 enhancement; (4) Defense counsel was ineffective for a failure to file pre-trial motions; and (5) Petitioner is entitled to a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(2).

## II. § 2255 STANDARD

28 U.S.C. § 2255 provides a federal prisoner four general grounds for relief: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) the court "lacked jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

## III. IMPROPER ARRAIGNMENT

The Defendant claims his convictions were obtained in violation of Federal Rules of Criminal Procedure 10 and 43(a)(1) because he was not present at arraignment. Docket No. 1-1, 2. Rule 10 generally requires that arraignment be

5

held "in open court." Fed. R. Crim. P. 10(a)(1). It also generally requires the presence of the defendant as a procedural safeguard in order to assure the defendant understands which of his rights the proceeding may affect. Id. Rule 43(a)(1) reinforces the general requirement of Rule 10 and generally requires the defendant "be present at . . . the initial arraignment." Fed. R. Crim. P. 43(a)(1).

As with many a general rule in law, Rule 10(a)(1) and Rule 43(a)(1) are subject to exceptions. Rule 43 provides that the presence of a defendant is not required if "Rule 10 provides otherwise . . . ." Fed. R. Crim. P. 43(a). Rule 10(b)(2) provides that,

> A defendant need not be present for the arraignment if . . . the defendant, in a written waiver signed by both the defendant and defense counsel, has waived appearance and has affirmed that the defendant received a copy of the indictment or information and that the plea is not guilty; and . . . the court accepts the waiver.

Fed. R. Crim. P. 10(b)(2).

As previously noted, Petitioner and his defense counsel signed a waiver of personal appearance in which Petitioner affirmed he received a copy of the indictment and pled guilty.

Cr. Docket No. 4. On April 1, 2008, Chief Magistrate Judge Paul A. Zoss accepted Petitioner's waiver. Cr. Docket No. 5. Thus, in this case, there is a valid exception to the general rule that a defendant must be present at arraignment.

While the signed waiver indicates otherwise, Petitioner insists that he did not in fact sign the waiver and Magistrate Zoss denied him his right to be present at arraignment in a "secret proceeding." Docket No. 1, 3-4. Even if this Court were to agree that defense counsel and Magistrate Zoss conspired to deprive Petitioner of his right to be present at arraignment - a proposition for which no supporting evidence has been presented - the Supreme Court has ruled that a failure to comply with arraignment procedures in a case later decided at trial is "a mere technical irregularity not warranting a reversal of a conviction if not raised before trial." Fed. R. Crim. P. 10, 1944 Advisory Committee Notes (citing Garland v. State of Washington, 232 U.S. 642 (1914)). Therefore, because the waiver Petitioner signed effectively terminated his right to be present at arraignment, and defects in arraignment proceedings are generally obsolete post jury convictions, Petitioner's argument does not provide grounds

for this Court to vacate, set aside, or correct his sentence
pursuant to § 2255.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

"[T]he right to counsel is the right to effective
assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759,
771 (1970).   The Fourteenth Amendment Due Process Clause
guarantees the right to a fair trial.   <u>Strickland v.</u>
<u>Washington</u>, 466 U.S. 668, 684-85 (1984).   The Sixth Amendment
guarantees the right to assistance of counsel.   U.S. Const.
amend. VI.   In <u>Strickland v. Washington</u>, the Supreme Court
elaborated on the relationship between the Fourteenth and
Sixth Amendments:

> The benchmark for judging any claim of
> ineffectiveness must be whether counsel's
> conduct so undermined the proper
> functioning of the adversarial process that
> the trial cannot be relied on as having
> produced a just result.

466 U.S. at 686.

The moving party must demonstrate two components to
establish ineffective assistance of counsel:   (1) counsel's
conduct was deficient, and (2) prejudice.   466 U.S. at 687.
Counsel's conduct is deficient when it is unreasonable "under
prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688.

8

A showing of prejudice requires that "counsel's errors" be so serious that they "deprive the defendant of a fair trial . . . ." 466 U.S. at 687. In other words, a Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability does not require a Petitioner to show that the outcome would have been different by a "preponderance of the evidence" but does require "a probability sufficient to undermine confidence" in the outcome. Strickland, 466 U.S. at 694.

**A.     Whether Defense Counsel's Failure to Challenge Petitioner's Guideline Enhancement as a Career Offender Constituted Ineffective Assistance of Counsel**

U.S.S.G. §4B1.1(a) provides,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the

> defendant has at least two prior felony
> convictions of either a crime of violence
> or a controlled substance offense.

U.S.S.G. §4B1.1(a).

As previously noted, for purposes of calculating a Guideline sentencing range, a career offender is automatically given a criminal history category of VI, and, when a defendant is facing a maximum sentence of life, as Petitioner was, an offense level of 37. U.S.S.G. § 4B1.1(b). In this case, Petitioner's career offender enhancement drove the sentencing range this Court ultimately considered.

Prior to sentencing, defense counsel did in fact make objections to the career offender enhancement. On November 6, 2008, this Court held a hearing to consider defense counsel's objections; and the Government presented the testimony of a finger print expert, showing the finger prints of the person arrested in the prior convictions at issue were Petitioner's. Cr. Docket No. 54. The Government also presented the testimony of a police officer who testified that the NCIC database, a database kept by the FBI, attributed the two prior convictions at issue to Petitioner, and the available photographs and height and weight descriptions matched

Petitioner.  Id.  For these reasons, this Court ultimately determined the Government met its burden of proof in relation to the career offender enhancement and Petitioner was subject to a Guideline range of 360 months to life.  Cr. Docket No. 57, 4.

In his Pro Se § 2255 Petition, Petitioner impliedly admits that he was in fact the person arrested in the prior offenses the government relied upon at sentencing, but now claims that one of the prior offenses was a simple possession, rather than a "controlled substance offense" under U.S.S.G. §4B1.2.  Docket No. 1-1, 9.  However, the term "controlled substance offense" in §4B1.2 is defined as "an offense under federal or state law, punishable by imprisonment for term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute."  U.S.S.G. § 4B1.2(b).  Petitioner was convicted of Possession with Intent to Deliver a Controlled Substance, two vials of crack cocaine, to an undercover police officer, which could have been subject to a sentence exceeding a year.  Cr. Docket No. 49, 13.  Thus, Petitioner's argument lacks merit.

In a supplemental brief, Petitioner's counsel, Attorney Shelley A. Goff, argues the United States Sentencing Commission exceeded its authority in allowing state crimes to be considered when determining whether someone is a career offender. Specifically, 28 U.S.C. § 944(h), the statute enabling the United States Sentencing Commission to promulgate an enhancement for career offenders, provides:

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and -
>
> (2) has previously been convicted of a felony that is -
> (A) a crime of violence; or
> (B) <u>an offense described in section 401 of the Controlled Substances Act.</u>[4] 28 U.S.C. § 944(h). (emphasis added)

Because 28 U.S.C. § 944(h)(B) explicitly refers to offenses "described in" the Controlled Substances Act, Petitioner's counsel contends U.S.S.G. §4B1.2 improperly

---

[4] 21 U.S.C. § 841 of the Controlled Substances Act make it a federal crime to distribute a controlled substance, which is analogous to Petitioner's state conviction of possession with intent to deliver.

considers state offenses.[5]  In support of the argument Petitioner's counsel cites <u>Nijhawan v. Holder</u>. 129 S. Ct. 2294 (2009).  In <u>Nijhawan</u>, the Supreme Court specifically considered whether statutory language referring to an antecedent crime should be interpreted as "categorical," in which case the antecedent crime is a generic class of crimes, or "circumstance-specific," in which case the antecedent crime refers "to the specific way in which an offender committed the crime on a specific occasion."  129 S. Ct. 2294, 2298 (2009). In a discussion of 8 U.S.C. § 1101(a)(43), which lists "aggravated felonies" for purposes of triggering certain immigration consequences for non-citizens,[6] the Court noted that the list, at times, clearly references generic crimes, such as when it refers to "'murder, rape, or sexual abuse of a minor,'" but, at other times, clearly references

---

[5] §4B1.2 counts offenses "<u>under federal or state law</u>, punishable by imprisonment for term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute."  U.S.S.G. § 4B1.2(b).

[6] For non-citizens, conviction for an aggravated felony results in automatic deportation, ineligibility for asylum, and, if an aggravated felon is subsequently caught re-entering the United States, an offense level enhancement at the time of sentencing.  <u>Lopez v. Alberto R. Gonzales</u>, 549 U.S. 47, 50-51 (2006) (citations omitted).

"circumstance-specific" crimes, such as when it refers to "an 'offense described in' a particular section of the Federal Criminal Code." Id. The Court did not, as Petitioner maintains, state that "[w]here a statute refers to offenses 'described in' specific sections of the criminal code, it should be read to mean those specific offenses." Docket No. 20, 7. Though Nijhawan is not an easy read, this Court is convinced the Nijhawan Court merely stated that, when a statutory provision references an "offense described in" a particular section of code, the offense may be read to require the commission of a crime in a specific way on a specific occasion, which is not the same as requiring a violation of the specific provision of code referenced. In other words, when a statute refers to a circumstance specific crime, it encompasses all acts done in a specific manner, not all acts done in violation of a particular section of code, whether state or federal. In this case, Plaintiff's Illinois conviction in Case Number 00-CR-413201, for Possession with Intent to Deliver a Controlled Substance, involved circumstance specific conduct analogous to offenses within Section 401 of the Controlled Substances Act.

The Petitioner also cites the Supreme Court's decision in

<u>Lopez v. Gonzales</u> for the proposition that

> [t]he Supreme Court has noted that a state offense whose elements include the element of a federal drug felony is an 'aggravated felony' under 8 U.S.C. § 1101(a)(43), but that is because the statute states that the term 'aggravated felony' 'applies to an offense described in this whether in violation of Federal or State law.'

Docket No. 20, 7 (quoting <u>Lopez v. Gonzales</u>, 549 U.S. 47, 56-57 (2006).

Petitioner's counsel argues that if Congress had intended 28 U.S.C. § 944(h) to enable the Sentencing Commission to consider state offenses when creating an enhancement for prior offenses, Congress would have simply included the "Federal or State law" language used in 8 U.S.C. § 1101(a)(43), rather than merely referencing the Controlled Substances Act. However, this Court is not persuaded that <u>Lopez</u> went so far. There is no suggestion in <u>Lopez</u> that the language referencing state law is necessary for a state offense to be sufficient. In <u>U.S. v. Consuegra</u>, the Eighth Circuit specifically addressed Petitioner's argument and ruled that "§ 944(h)(2)(B) allows the Sentencing Commission to count earlier state drug convictions towards career offender status." <u>U.S. v.</u>

Consuegra, 22 F.3d 788, 789 (8th Cir. 1994) (citations omitted). Because § 944(h)(2)(B) does not state that it applies only to "convictions of" the Controlled Substances Act but rather states that it applies to "an offense described in" the Controlled Substances Act, it authorizes the Sentencing Commission to consider analogous state offenses. Id. The "described in" language elicits the need for a "circumstance-specific" analysis, which, again, only refers to "the way in which an offender committed the crime on a specific occasion." 129 S. Ct. at 2298. It does not elicit a need for an offender to be convicted of a violation of the specific statute referenced. If Section 944(h)(2)(B) were given the effect Petitioner desires, defendants who have engaged in the same unlawful acts would be subject to disparate treatment in federal court - a result Congress likely did not intend and a result that would be clearly unfair.

**B. Whether Defense Counsel was Ineffective for Failing to Argue that Defendant's Prior Conviction resulted in both a 21 U.S.C. § 851 Enhancement and a U.S.S.G. § 4B1.1 Enhancement**

Petitioner maintains that defense counsel failed to argue that Petitioner's two prior felony convictions resulted in a

21 U.S.C. § 851 enhancement, doubling his statutory mandatory minimum from 10 to 20 years, as well as a U.S.S.G. §4B1.1 enhancement, subjecting him to a Guideline range of 360 months to life.  This Court was well aware that statutory and Guideline enhancements were both potentially triggered by past convictions and that knowledge was implicit throughout the hearing this Court held to consider whether Petitioner was in fact the person convicted of the past convictions at issue, and so defense counsel was not remiss in failing to explicitly point out the obvious.

Petitioner also claims "the same conviction was being used twice to substantially enhance the sentence," but this is simply not accurate.  Docket No. 20, 9.  The statutory and Guideline enhancements do not operate cumulatively; while a court must obey a statutory mandatory minimum, court's must consider the Guideline range if greater.  This Court in fact never determined whether the 21 U.S.C. § 851 enhancement applied, because this court, based on the applicable Guideline range after the U.S.S.G. §4B1.1 enhancement and consideration of the 18 U.S.C. 3553(a) factors, was not going to sentence Petitioner below the 20 year mandatory minimum which was more

than likely applicable pursuant to 21 U.S.C. § 851.
Therefore, counsel's conduct was not deficient, and Petitioner
was not prejudiced.

## C. Whether Defense Counsel was Ineffective for Failing to File Pre-trial Motions

Petitioner claims defense counsel failed to file a number
of pre-trial motions: (1) motion for pre-trial discovery; (2)
motion to suppress statements Petitioner made to officers
prior to reading him his <u>Miranda</u> rights, (3) motion to dismiss
based on the failure of the indictment to state that he had
conspired with co-defendants, and (4) a motion for a judgment
of acquittal based on the Government's failure to show
Petitioner had conspired with co-defendant's.

### 1. Motion for Pre-trial Discovery

The role of discovery is limited in criminal proceedings.
18 U.S.C. § 3500(a) provides:

> In any criminal prosecution brought by the
> United States, no statement or report in
> the possession of the United States which
> was made by a Government witness or
> prospective Government witness (other than
> the defendant) shall be the subject of
> subpoena, discovery, or inspection . . . .

In Petitioner's case, Magistrate Zoss approved the standard stipulated discovery order for this jurisdiction. Cr. Docket No. 6. Petitioner neither claims there was anything lacking in the discovery order nor specifically identifies how defense counsel failed to examine the Government's case against him. Therefore, Petitioner has not met his burden to show that defense counsel's representation was deficient or that prejudice resulted.

## 2. Motion to Suppress Evidence

Petitioner argues defense counsel should have filed a motion to suppress statements Petitioner made prior to being mirandized, but the record indicates Petitioner's statements in question were made after he was given his <u>Miranda</u> warning. The PSIR notes Petitioner, in a "post-Miranda statement," admitted that he "had been involved in the distribution of one half to one kilogram of cocaine . . . ." P.S.I.R., 6. Further, at trial, the police officer who received Petitioner's omission testified he had read the Petitioner his <u>Miranda</u> rights. Finally, Petitioner offers no evidence indicating he was not mirandized. Thus, Petitioner has not met his burden to show that defense counsel's failure to file

a pre-trial motion to suppress his confession constituted deficient representation or that prejudice resulted.

### 3. Motion to Dismiss Based on the Failure of the Indictment to Name Petitioner's Conspirators

Federal Rule of Criminal Procedure 11(c)(1) provides that an indictment "must be a plain concise, and definite written statement of the essential facts constituting the offense charged . . . ." Count 1 of the indictment clearly states that Petitioner "did knowingly and unlawfully combine, conspire, confederate and agree with other persons . . . to distribute 50 grams or more of . . . 'crack cocaine' . . . ." Cr. Docket 2-2. Furthermore, the Eighth Circuit has held that "'[t]he identity and exact participation of other coconspirators in a conspiracy is not required,'" not only within the indictment but in order to be convicted at trial. U.S. v. Oseby, 148 F.3d 1016, 1024 (8th Cir. 1998) (citing U.S. v. Jankowski, 713 F.2d 394, 397 (8th Cir. 1983)). Therefore, defense counsel's failure to file a motion to dismiss the indictment based on the absence of named co-conspirators was not deficient representation and did not result in prejudice.

**4. Motion for a Judgment of Acquittal Based on the Government's Failure to Show the Petitioner had Conspired with Co-Defendant's[7]**

In <u>United States v. Chavez-Alvarez</u>, the Eighth Circuit noted:

> To convict a defendant of conspiracy to distribute drugs, the government must prove that there was an agreement to distribute drugs, that the defendant knew of the agreement, and that the defendant intentionally joined the agreement.

594 F.3d 1062, (8th Cir. 2010) (citing <u>United States v. Benitez</u>, 531 F.3d 711, 716 (8th Cir. 2008)).

In his post-Miranda interview with police, Petitioner admitted that he was bringing drugs to Sioux City, Iowa, from people in Chicago, Illinois, and that drugs and money seized from others in Sioux City belonged to him. Cr. Docket No. 49, 6. At trial, "Antonio Jones, Daniel Frye, Kimberlee Fontenot, and Myree Coleman testified as to their involvement with the [Petitioner] in the distribution of crack cocaine . . . ." <u>Id.</u> at 7. Testimony presented at trial specifically indicated Petitioner had worked with others in order to facilitate his

---

[7] A motion for acquittal is not a pre-trial motion, but this Court has included it in this section in order to conform with Petitioner's petition.

crack cocaine distribution business.  <u>Id.</u> at 9.  Given the evidence presented at trial, it can neither be said that defense counsel's failure to seek an acquittal for lack of evidence supporting a conspiracy constituted deficient representation nor that prejudice resulted therefrom.

**V.  RELIEF PURSUANT TO 18 U.S.C. § 3582(c)(2)**

Petitioner maintains that he is entitled to relief pursuant to Amendment 750 to the United States Sentencing Guidelines.  Amendment 750 (Parts A and C) lowers the sentencing guideline range for certain crack cocaine offenses. 18 U.S.C. § 3582(c)(2) provides:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The Government argues the Fair Sentencing Act is not retroactive.  While it is true that the Eighth Circuit has so ruled, the United States Sentencing Commission has subsequently decided to give the Fair Sentencing Act

retroactive effect.   See U.S. v. Sidney, 648 F.3d 904 (8th Cir. 2011) (ruling that the Fair Sentencing Act is not retroactive) and U.S. v. Rivera, 2011 WL 5022734, fn 10 (2nd Cir. 2011) (stating that in "June of this year . . . the Commission voted to give retroactive effect to the . . . Fair Sentencing Act of 2010").  Though the Eighth Circuit rule that the Fair Sentencing Act of 2010 is not retroactive may still be good law in as far as it relates to statutory changes – so long as they do not explicitly state they are retroactive – this Court is persuaded it is no longer good law in relation to the Guidelines.   Notably, every district court in the Northern District of Iowa has already reviewed and amended its judgments, where appropriate, to reflect the sentencing commission's decision to apply the Fair Sentencing Act of 2010 retroactively; and this Court can think of no reason why this Petitioner should be treated differently.

However, in this case, the changes made by the Fair Sentencing Act of 2010, because it did not alter the applicable guideline range for career offenders, simply does not provide Petitioner relief.  United States v. Collier, 581 F.3d 755, 758 (8th Cir. 2009) (reiterating that relief under

18 U.S.C. §3582(c)(2) is not available to defendants who were sentenced under the career offender provision of the sentencing guidelines). If Petitioner were sentenced today, he would still face a guideline range of 360 months to life. In fact, on April 25, 2012, this Court filed an Order on Petitioner's underlying criminal docket indicating that he was not entitled to relief pursuant to Amendment 750 and 18 U.S.C. § 3582(c)(2) because his sentence was driven by his status as a career offender. Crim. Docket No. 77. Therefore, Petitioner's claim is denied as moot.

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2255(c)(2), the district court may issue a certificate of appealability, which will allow a petitioner to appeal the denial of his § 2255 petition. The district court should only issue a certificate of appealability if "'the applicant has made a substantial showing of the denial of a constitutional right.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 483 (2000) (citing 28 U.S.C. § 2253(c)). In <u>Slack</u>, the Supreme Court defined "substantial showing" as follows:

> To obtain a [certificate of a appealability] under § 2253(c), a habeas

24

> prisoner must make a substantial showing of
> the denial of a constitutional right, a
> demonstration that . . . includes showing
> that reasonable jurists could debate
> whether (or, for that matter, agree that)
> the petition should have been resolved in
> a different manner or that the issues
> presented were "'adequate to deserve the
> encouragement to proceed further.'"
> <u>Barefoot</u>, 463 U.S. at 893, and n.4, 103 S.
> Ct. 3383, 77 L. Ed. 2d 1090 (sum[ming] up
> the "substantial showing" standard).

<u>Slack</u>, 529 U.S. at 483-84.

After thoroughly considering the record in this matter, the Court is persuaded that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." <u>Slack</u>, 529 U.S. at 483-84. The Court's decision in this case was a judgment call, and this Court is of the opinion that all its judgment calls should be reviewable. As precedent in <u>Tiedeman v. Benson</u> requires, this Court grants a certificate of appealability for all of Petitioner's claims. 122 F.3d 518 (8th Cir. 1997).

## VII. CONCLUSION

Because, in the view of this Court, Mr. Beane fails to state a meritorious claim under the prevailing laws, his motion to vacate, set aside, or correct his sentence pursuant

to 28 U.S.C. § 2255 is hereby **denied**.  **The Clerk of Court shall issue a certificate of appealability to Mr. Beane as provided above.**

    **IT IS SO ORDERED** this 24th day of May, 2013.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa